**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOE JULIANO, Individually and on Behalf of All Others Similarly Situated, | |
| *Plaintiff*, | Case No.: |
| v. | **CLASS ACTION COMPLAINT** |
| GENERAC HOLDINGS INC. | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiff, Joe Juliano ("Juliano" or "Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for his Class Action Complaint against Generac Holdings Inc. ("Generac" or "Defendant") and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1.      This is a consumer protection action brought to address safety issues caused by defectively designed and manufactured generators that can "fail to vent adequately from the rollover valve, causing the gas tank to build up excess pressure and expel fuel when opened, posing fire and burn hazards."[1]

---

[1]   https://www.generac.com/about-us/product-recall-notifications/gp15000-gp17500-recall   (last accessed September 22, 2023).

2.     The recall involves "Generac Portable Generators ("Generators") type GP15000E, with model numbers G0057341, G0057342, 005734R1, and 005734R2, and type GP17500E, with model numbers G0057351, G0057352, 005735R1, and 005735R2."[2]

## PARTIES

3.     Plaintiff, Joe Juliano, is a resident and citizen of North Carolina, residing in the city of Wilmington, North Carolina (New Hanover County).

4.     Defendant Generac Holdings Inc. is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business located at S45 W29290 Hwy. 59, Waukesha, Wisconsin 53187. Defendant conducts business throughout this District, the State of North Carolina, and the United States.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because: (i) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interests and costs, and (ii) Plaintiff and members of the proposed class are citizens of states different from Defendant's home state. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Defendant transacts their business in this District, and a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

7.     This Court has Personal Jurisdiction over Defendant because it has sufficient minimum contacts in this District as Defendant marketed, advertised, and distributed the products

---

[2] https://www.generac.com/about-us/product-recall-notifications/gp15000-gp17500-recall (last visited September 22, 2023).

in this District. Defendant does substantial business in North Carolina and within the District, and at all times relevant hereto, Defendant promoted, marketed, distributed, warranted, and sold generators in interstate commerce. Further, Defendant, as a corporate entity, is deemed to reside in any Judicial District in which it is subject to Personal Jurisdiction.

## FACTUAL ALLEGATIONS

8.      Generac Holdings Inc. is a manufacturer that produces a full complement of home and business generators and power washers[3] and prides itself on being the "#1 name in home backup generators."[4]

9.      Founded in 1959, Generac was the first to engineer affordable home standby generators, along with the first engine developed specifically for the rigors of generator use.[5]

10.      According to their website, Defendant manufactures "the widest range of power products in the marketplace including portable, residential, commercial and industrial generators."[6]

11.      Defendant manufactures a large array of fixed home and business generators, as well as a large number of portable generators.

12.      Unfortunately, some of these generators were not properly manufactured and now pose fire and burn hazards.

13.      As such, Defendant and the U.S. Consumer Product Safety Commission issued a product recall on September 14, 2023.[7]

---

[3] https://www.generac.com/all-products (last visited September 22, 2023).
[4] https://www.generac.com/about-us (last visited September 22, 2023).
[5] *Id.*
[6] *Id.*
[7] https://www.cpsc.gov/Recalls/2023/Generac-Recalls-Portable-Generators-Due-to-Serious-Fire-and-Burn-Hazards (last visited September 22, 2023).

Case 7:23-cv-01329-FL   Document 1   Filed 09/22/23   Page 3 of 30

14. This recall affects about 64,000 units and "involves Generac Portable Generators type GP15000E, with model numbers G0057341, G0057342, 005734R1, and 005734R2, and type GP17500E, with model numbers G0057351, G0057352, 005735R1, and 005735R2. "Generac" and the unit type are printed on both sides of the tank and on the control panel of the generators. The model number is printed on a label on the heat shield between the engine and alternator of the generator."[8]

15. The generators at issue in this complaint were sold old at major home improvement and hardware stores throughout the county and on various websites from April 2011 through June 2023 for between $3,300 and $3,650.[9]

16. Photos of both unit types are listed below:[10]



**Recalled Generac GP15000E Portable Generator**

---

[8] *Id.*
[9] https://www.generac.com/about-us/product-recall-notifications/gp15000-gp17500-recall (last visited September 22, 2023).
[10] *Id.*



**Recalled Generac GP17500E Portable Generator**

17.　Specifically, "the recalled generators' fuel tank can fail to vent adequately from the rollover valve, causing the gas tank to build up excess pressure and expel fuel when opened, posing fire and burn hazards.[11]

18.　The recall announcement advises consumers to "immediately stop using the recalled generators and contact Generac for a free repair kit."[12]

19.　To date, Defendant Generac has received reports of 27 incidents of the generators overheating and pressurizing or expelling fuel when opened, including three incidents resulting in severe burn injuries.[13]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*

## PLAINTIFF'S FACTUAL ALLEGATIONS

20.     Plaintiff purchased one of Defendant's dangerous Generators from an online retailer on or around May 2022.

21.     At all times relevant, Plaintiff purchased and owns Defendant's defective Generate unit type GP17500E, model number G0057352, and serial number 3011031440.

22.     Plaintiff purchased the Generator with the intent of using it to power the equipment located inside his ice cream trailer.

23.     On or around October 2022, Plaintiff was using Defendant's defective Generator in his ice cream trailer at an event when the Generator shut off.

24.     Plaintiff climbed up into the bed of his truck, where the Generator was sitting, when he noticed that the Generator's gasoline tank had ballooned to over at least two times its original size.

25.     Worried it would rupture or, even worse explode, Plaintiff attempted to release the excess pressure that had accumulated in the gasoline tank by loosening the Generator's gas cap.

26.     The sudden release of built-up pressure in the gas tank caused gasoline to erupt from the fuel tank, spewing gasoline all over Plaintiff – in his eyes, his nose, his mouth, and his body – and completely dousing his clothing in gasoline.

27.     Plaintiff rinsed the gasoline off with a hose as best he could but has still suffered a rash/skin irritation and chemical burn caused from the gasoline contact with his skin.

28.     Had the faulty Generator not shut off, the excess pressure could have resulted in an explosion, causing much more severe personal injuries as well as significant damage to his personal property and the property and persons of those around.

6

29.     Plaintiff has lost, and continues to lose, money because the Defendant's dangerous and defective Generator shuts down at events, thus leaving Plaintiff unable to operate his ice cream trailer/truck without the Generator.

30.     Plaintiff attempted to remedy the issue by building a cover for the Generator so as to avoid overheating, but to no avail.

31.     The only way for Plaintiff to semi-effectively run the machine during events without the gas tank expanding is to start and run the machine with the fuel tank cap loosened to help ventilate the highly pressurized gasoline fumes.

32.     Plaintiff seeks to remove the hazardous Generators from the market, enjoin Defendant from further jeopardizing the safety of Class Members, and compensate both Plaintiff and Class Members for the economic damage they have incurred by from buying the improperly designed Generators. Plaintiff seeks all available damages, penalties, punitive damages, declaratory and injunctive relief for Defendant's conduct.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class and Subclass are defined as follows:

**Nationwide Title Class:** All persons in the United States who purchased a Generac Portable Generator types GP15000E, with model numbers G0057341, G0057342, 005734R1, and 005734R2, and type GP17500E, with model numbers G0057351, G0057352, 005735R1, and 005735R2.

**North Carolina Subclass:** All persons from North Carolina who are members of the Nationwide Class.

34.     Together, the Nationwide Class and North Carolina Subclass will be collectively referred to as the "Classes," and individuals in the Classes will be referred to as "Class Members" or "members of the Classes"

35.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraph.

36.     Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; or (iii) an employee of the Court where this action is pending.

37.     The proposed class definitions in ¶ 33 as limited by ¶ 36 may be amended or modified from time to time.

38.     The particular members of the (i) Nationwide Title Class, and (ii) North Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of the Defendant or their affiliates and agents, and from public records.

39.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40.     The Proposed Classes are so numerous that joinder of all members is impracticable.

41.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

42.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** This Class numbers at least in the thousands of persons. As a result, joinder of all Class Members in a single action is

impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

43.     **Existence and Predominance of Common Questions of Law and Fact – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a. Whether the Generac Portable Generators are defective;

b. Whether the defective Generators pose an unreasonable safety risk or are otherwise material to reasonable consumers;

c. Whether an ordinary reasonable consumer would have purchased a Generator had he or she known of the defective and dangerous nature of such Generators;

d. Whether an ordinary reasonable consumer would have paid less money to purchase a Generator had he or she known of the defective Generators;

e. Whether the Class Members were denied the benefit of their bargain as a result of the undisclosed defect;

f. Whether Defendant had actual or constructive knowledge of the defect;

g. Whether Defendant had a duty to disclose the Generator's defect before or at the time Plaintiff and the Classes purchased or leased their respective Generators;

h. Whether Defendant had and have an ongoing duty to disclose the defect;

i. Whether Defendant breached their express and implied warranties for the Generators;

j. Whether Defendant breached other duties or violated other applicable laws by their representations and/or by their omissions, including concealment of the Generator's hazardous defect;

k.  Whether Defendant should be declared legally and financially responsible for notifying the Class Members of the true and complete nature and extent of the defective Generators;

l.  Whether and to what extent Defendant is obligated to pay actual and consequential damages to the Class Members as a result of the Generator's defect;

m.  Whether Defendant fraudulently concealed the Generators contained a dangerous defect;

n.  Whether Defendant's misconduct was knowing and willful;

o.  Whether Defendant should be obligated to pay punitive damages in connection with the claims brought in this action, and if so, the amount of those damages;

p.  Whether Defendant was unjustly enriched by receiving Plaintiff's and the Class Members' money for the Generators;

q.  Whether Defendant should be ordered to disgorge all or part of the monies received from Plaintiff and the Classes in exchange for the Generators; and

r.  Whether Plaintiff and the Classes are entitled to damages, injunctive relief, restitution, or other relief sought in this Complaint.

44.    The questions set forth above predominate over any questions affecting only individual persons concerning Defendant's services throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

45.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the Classes in that the Class Members uniformly used Defendant's services and product(s), and were subjected to Defendant's uniform merchandising materials and

representations at the time of purchase.

46.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests.  In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action.  The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

47.    **Adequacy – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representative of the Classes because he is a member of the Classes and his interests do not conflict with the interests of the Classes that he seeks to represent. The interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

48.    **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while  establishing incompatible

standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

49. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from renting or otherwise providing their services until such time that Defendants can demonstrate to the Court's satisfaction that their services confer the advertised benefits and are otherwise safe to use as intended.

50. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

51. Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I
## NEGLIGENCE

52.     Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

53.     Plaintiff brings this count on behalf of himself and the Classes.

54.     Defendant caused defective Generators to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Classes.

55.     At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Generators, including the duty to take all reasonable steps necessary to provide safe Generators to Plaintiff and Class Members.

56.     Defendant breached this duty by providing Generators with the hazardous defect. For decades, Defendant has produced other Generators without this defect, which is evidence that Defendant did not exercise proper care in producing the recalled Generators. Additionally, many other manufacturers produce safe and effective generators.

57.     Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing effective Generators could cause or be associated with Plaintiff's and Class Members' injuries.

58.     Defendant's alleged negligence included:

    a.   Selling and/or distributing the Generators while negligently and/or intentionally not providing effective and safe Generators; and

    b.   Systematically failing to provide consumers with safe Generators in multiple states.

59.     As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages.

60. But for Defendant's negligent design, production, and marketing of the Generators, Plaintiff and the Classes would not be injured as they would not have purchased the Generators with the dangerous defect.

61. Plaintiff's and Class Members' injuries were foreseeable as Defendant had received reports from Plaintiff and Class Members regarding failure to provide safe and effective Generators at the time of purchase.

62. Further, it is foreseeable that a Generators with a defective ventilation valve would be worthless as it would be a massively dangerous Generator to use. It is also reasonably foreseeable that Defendant's defective product would harm any resale value of the Generators, given that a generator with a defective ventilation valve would be worth less to a consumer, when compared to a generator with working gas tank ventilation valve.

63. As a result of Defendant's breach, Plaintiff and the Classes were harmed in that they are now operating Generators with faulty and dangerous valves, or Generators whose gas tank may explode and cause serious injury and burns, given Defendant's confounding lack of due care in its design and product.

64. Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

65. Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a Generator that is now worthless and unsafe.

66. Plaintiff also suffered economic loss in reference to the value of his Generator. As a result of Defendant's defective Generators, Plaintiff's generator's resale value is now diminished. If and when Plaintiff and the Classes intend to sell their respective Generators, the reputation of

being a faulty and even dangerous Generator will harm the resale value, compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Generators.

67.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's defect. Plaintiff and Class Members must also incur time and costs related to getting their Generators repaired. Plaintiff and the Classes have been greatly inconvenienced by Defendant's defective Generators.

## COUNT II
## NEGIGENT DESIGN DEFECT

68.    Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

69.    Plaintiff brings this count on behalf of himself and the Classes.

70.    Defendant owed Plaintiff and the Classes a duty to reasonably and safely design, manufacture, market, and sell the Generators.

71.    Defendant breached this duty as the design and manufacture of the Generators were defective, which caused the Generators to not be fit or suitable for their intended purposes. Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Classes as the Generators now are worth less compared to the value prior to the existence of the defect, given the notoriety of the defect.

72.    Defendant did not exercise due care in the production of the Generators found in the recall. Defendant's design horribly malfunctions, and many other Generators exist that do not have this ventilation valve defect.

73.    Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a Generator that is now worthless and unsafe.

74.    Plaintiff also suffered economic loss in reference to the value of his Generator. As a result of Defendant's defect, Plaintiff's Generator's resale value is now diminished. When

Plaintiff intends to sell his Generator, the reputation of being a faulty Generator will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised the Generators.

75.     Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's defect. Plaintiff has been greatly inconvenienced by Defendant's defective Generator.

76.     The design of the defective Generators is unacceptable as generators produced by other companies and manufacturers work properly and do not have this same defect.

77.     Plaintiff's Generator is in virtually identical condition as to when they left Defendant's factory with the defective ventilation valve intact.

78.     Further evidence of the Generators poor quality is the workmanship when compared to industry norms for the lifespan of the defective Generators.

79.     Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a Generator that is now worthless and unsafe.

80.     Plaintiff also suffered economic loss in reference to the value of his Generator. As a result of Defendant's defect, Plaintiff's Generator's resale value is now diminished. When Plaintiff intends to sell his Generator, the reputation of being a faulty Generator will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised the Generators.

81.     Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours, tending to Defendant's defect. Plaintiff has been greatly inconvenienced by Defendant's defective Generators.

## <u>COUNT III</u>
## BREACH OF EXPRESS WARRANTY

82.     Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

83.     Plaintiff brings this count on behalf of himself and the Classes.

84.     Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Generators. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

85.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Generators' packaging and through marketing and advertising, as described above.

86.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

87.     As set forth above, Defendant purports through their advertising, labeling, marketing, and packaging, to create an express warranty that the Generators are safe and reliable for their intended use.

88.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Generators.

89.     Defendant breached express warranties about the Generators and their qualities because Defendant's Generators contained defects and the Generators do not conform to Defendant's affirmations and promises described above.

90.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

17

91.     As set forth above, Defendant purports through their advertising, labeling, marketing, and packaging, to create an express warranty that the Generators are safe for their intended use.

92.     Plaintiff and the members of the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Generators.

93.     Defendant breached express warranties about the Generators and their qualities because Defendant's Generators contained defects and the Generators do not conform to Defendant's affirmations and promises described above.

94.     Plaintiff and each of the members of the Classes would not have purchased the Generators had they known the true nature of the Generator's ventilation valve defect.

95.     As a result of Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

96.     Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a Generator that is now worthless and unsafe.

97.     Plaintiff also suffered economic loss in reference to the value of his Generator. As a result of Defendant's defect, Plaintiff's Generator's resale value is now diminished. When Plaintiff intends to sell his Generator, the reputation of being a faulty Generator will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised the Generators.

98.     Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours, tending to Defendant's defect. Plaintiff has been greatly inconvenienced by Defendant's defective Generators.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

99.     Plaintiff incorporates Paragraphs 1-51 as if fully set forth herein.

100.    Plaintiff brings this count on behalf of himself and the Classes.

101.    Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Generators.

102.    The Generators are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Generators, as goods, were purchased.

103.    Defendant manufactured and sold the Generators contained in the recall to be used by Plaintiff and Class Members for personal use.

104.    The implied warranty of merchantability included with the sale of each Generator means that Defendant guaranteed that the Generators would be fit for the ordinary purposes for which Generators are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

105.    Defendant breached the implied warranty of merchantability because the Generators are not fit for their ordinary purpose of providing reasonably reliable and safe partable power. After all, Defendant did not indicate that the Generators would contain the dangerous defect.

106.    Given that Plaintiff and Class Members are unable to safely use the Generators without risk of the defective Generator's gas tank rupturing and spewing gasoline and potentially shrapnel, the Generators are not fit for their particular purpose of safely providing portable power.

107.    Defendant's warranty expressly applies to the intended purchaser of the Generators, creating privity between Defendant and Plaintiff and Class Members.

108. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

109. Defendant has been provided sufficient notice of their breaches of implied warranties associated with the Generators. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and its review of consumer complaints.

110. Had Plaintiff, Class Members, and the consuming public known that the Generators would not safely provide portable power, they would not have purchased the Generators or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the Generator's gas tank ventilation valve defect, they would not have purchased any of the Generators.

111. As a direct and proximate result of the foregoing, Plaintiff and the Classes suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

112. Plaintiff suffered injury in that he purchased a Generator that is hazardous and worthless. For all intents and purposes, Plaintiff's Generator is now a notoriously unsafe Generator that has trouble safely providing portable power.

113. Plaintiff also suffered economic loss in reference to the value of his Generator. As a result of Defendant's defect, Plaintiff's Generator's resale value is now diminished. When Plaintiff intends to sell his Generator, the reputation of being a faulty Generator will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised the Generators.

114.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's defect and accompanying required repairs. As discussed above, Plaintiff will spend hours tending to Defendant's defective Generators. Had Defendant produced a Generator that was safe and reliable, Plaintiff would not have had to spend hours upon hours of his life tending to this issue. Plaintiff did not bargain for, or pay for, a Generator with a faulty valve that has horrendous trouble safely ventilating pressure from gas and requires hours upon hours of work to safely operate.

## COUNT V
### FRAUD BY OMISSION

115.    Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

116.    Plaintiff brings this count on behalf of himself and the Classes.

117.    As set forth above, Defendant concealed and/or suppressed material facts concerning the safety of their Generators. Defendant knew that the defective Generators were designed and manufactured with defects, but Defendant concealed those material facts. Defendant recklessly manufactured and distributed the defective Generators to consumers in the United States, even though Defendant knew, or should have known, at the time of distribution, that the Generators contained material gas tank ventilation valve defects. Plaintiff and Class Members had no knowledge of these defects at the time that they purchased or leased the defective Generators.

118.    Defendant made material omissions and/or affirmative misrepresentations regarding the safety of their Generators.

119.    Defendant knew these representations were false when they were made.

120.    The Generators purchased by Plaintiff and Class Members were, in fact, defective, unsafe, and unreliable, because the Generators contained dangerous ventilation valve defects.

121.    Defendant had a duty to disclose these safety issues to Plaintiff, Class Members, and the public, but failed to do so.

122.    Defendant had a duty to disclose the true facts about the safety of the Generators because Defendant had superior knowledge and access to those facts, and the facts were not known to or reasonably discoverable by Plaintiff and Class Members. Defendant knew that Plaintiff and Class Members had no knowledge of the dangerous Generators defects, and that neither Plaintiff nor the other Class Members had an equal opportunity to discover the facts to inform them of those defects. Indeed, Plaintiff and Class Members trusted Defendant not to sell Generators that were defective or that violated federal law governing product safety.

123.    Defendant had a duty to disclose that the Generators were defective, unsafe, and unreliable in that it contained dangerous ventilation valve defects, because Plaintiff and Class Members relied on Defendant's representations that the Generators they were purchasing were safe and free from gas tank ventilation valve defects.

124.    The aforementioned concealment was material, because if it had been disclosed, Plaintiff and Class Members would not have bought their Generators.

125.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing a new Generator. Defendant knew or recklessly disregarded that their representations and/or statements on the safety of the Generators were false.

126.    As a result of the concealment and/or suppression of facts, Plaintiff and Class Members have sustained and will continue to sustain damages arising from the difference between the actual value of that which Plaintiff and the Classes paid and the actual value of that which they received.

127.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VI
## FRAUDULENT CONCEALMENT

128.     Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

129.     Plaintiff brings this count on behalf of himself and the Classes.

130.     As described above, Defendant made material omissions and affirmative misrepresentations regarding the defective Generators.

131.     The Defendant knew these representations were false when they were made.

132.     The Generators purchased by the Classes were, in fact, defective, unsafe, and unreliable, because the Generator's gas tank was subject to over-pressurization from a faulty ventilation valve, or other malfunctions.

133.     The Defendant had a duty to disclose that these Generators were defective, unsafe and unreliable in that the Generators were subject to excess pressure buildup that can expel fuel when opened or other malfunctions, because Plaintiff the Classes relied on the Defendant's representations that the Generators they were purchasing and retaining were safe and free from these defects.

134.     The aforementioned concealment was material, because if it had been disclosed the Classes would not have bought their Generators.

135.     The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing a new Generator. The Defendant knew or recklessly disregarded that their representations were false because they knew that people had been

injured as the result of the Generators. The Defendant intentionally made the false statements in order to sell Generators and avoid the expense and public relations nightmare of a recall.

136. The Classes relied on the Defendant's reputations – along with their failure to disclose the Generator's dangers and problems and the Defendant's affirmative assurance that its Generators were safe and reliable and other similar false statements – in purchasing the Generators.

137. As a result of their reliance, the Classes have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their Generators.

138. The Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Classes. The Classes are therefore entitled to an award of punitive damages.

<u>**COUNT VII**</u>
**UNJUST ENRICHMENT**

139. Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

140. Plaintiff brings this count on behalf of himself and the Classes.

141. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Generators.

142. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

143. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Generators without providing safely working Generators, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

144.    The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

145.    Defendant manufactured, marketed, and sold the Generators under the guise of these Generators being safe and operable. Instead, Defendant sold Generators that were truly unsafe, and potentially even deadly, given their ventilation vlave issues. And rather than refunding or reimbursing Plaintiff and Class Members the difference in value related to the diminished resale value, Defendant has issued a recall and repair kit.

146.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

<b><u>COUNT VIII</u><br>VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT<br>(15 U.S.C. §§ 2301 <i>ET. SEQ.</i>)</b>

147.    Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

148.    Plaintiff brings this count on behalf of himself and the Classes.

149.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

150.    The defective Generators are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

151.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

152.    Defendant is a "supplier[s]" and "warrantor[s]" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

153. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1) provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

154. Defendant provided Plaintiff and the other Class Members with an implied warranty of merchantability in connection with the purchase of their Generators that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendant warranted that the defective Generators were fit for their ordinary purpose as safe portable power, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

155. Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiff and the Classes pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the defective Generators share common design defects in that they are equipped with defective ventilation valve that can expel fuel, leaving operators of the Generators vulnerable to serious injury and even death. Defendant's recalls are woefully insufficient to address the defect.

156. In their capacity as warrantors, as Defendant had knowledge of the inherent defects in the Generators, any efforts to limit the implied warranties in a manner that would exclude coverage of the Generators is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Generators is null and void.

157. The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendant and Plaintiff and the other Class Members, as, at the time of purchase, Plaintiff and the other Class Members had no other options for purchasing

ventilation valves for their Generators other than those purchased by directly from Defendant.

158.    The limitations on the warranties are substantively unconscionable. Defendant knew that the Generators were defective and unsafe and would continue to pose safety risks after the warranties purportedly expired. Defendant failed to disclose these defects to Plaintiff and the other Class Members. Thus, Defendant's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

159.    Plaintiff and each of the other Class Members have had sufficient direct dealings with Defendant or their agents (dealers) to establish privity of contract. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Generators and have no rights under the warranty agreements provided with the Generators; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Generators are dangerous instrumentalities due to the aforementioned defects and nonconformities.

160.    Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

161.    Furthermore, affording Defendant an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale of each Generator, Defendant knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Generator's inability to perform as warranted, but nonetheless failed to rectify the situation

and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

162. Plaintiff and the other Class Members would suffer economic hardship if they returned their Generators but did not receive the return of all payments made by them. Because Defendant is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class Members have not re-accepted their Generators by retaining them.

163. Pursuant to 15 U.S.C. § 2310(d)(3), the amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their Generators, in an amount to be proven at trial.

164. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class Members in connection with the commencement and prosecution of this action.

165. Further, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Based on Defendant's continuing failures to fix the known dangerous defects, Plaintiff seeks a declaration that Defendant has not adequately implemented their commitments

and requirements and general commitments to fix its failed Generators, and injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiff also seeks the establishment of a Defendant-funded program for Plaintiff and Class Members to recover out of pocket costs incurred.

166.    Plaintiff also requests, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs he has incurred in attempting to rectify the Generator in his possession. Such expenses and losses will continue as Plaintiff and Class Members must take time off from work, pay for rentals or other power arrangements, and the myriad expenses involved in going through the recall process.

167.    The right of Class Members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendant's conduct presents common questions of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by the Defendant, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in his favor and against Defendant, awarding as follows:

A.    Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class Members are entitled;

D.    Scheduling a trial by jury in this action;

E.    Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F.    Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.    Any other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.


Dated: September 22, 2023                    Respectfully Submitted,

*/s/ Blake G. Abbott*
Blake G. Abbott (NC Bar No. 57190)
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY |**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: blake.abbott@poulinwilley.com
        paul.doolittle@poulinwilley.com
        cmad@poulinwilley.com